Hear ye, hear ye, hear ye, the United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to this Zoom hearing. We have one case this afternoon, and that is number 22-10630, United States v. Chalmer Detling, II. We have Mr. Cox here for Mr. Detling and Mr. Sisla for the United States. So, Mr. Cox, whenever you're ready. Thank you, your honor. Thank all of your honors for hearing us today. Mr. Appellant, Mr. Detling's case is based on three issues as seen in the pleadings in this case. A violation of the Speedy Trial Act and the insufficiency of evidence as to knowledge of the funds allegedly misused in this case or in the district court case, and then insufficient jury instruction. So, I'd like to take those in the order that they've been presented in the pleadings up to now. The speedy trial violation is a function of the motion to strike surplus that was filed by appellant defendant at the time, Detling, when represented by other counsel. And the issue is that motion should have excluded time under the Speedy, told the Speedy Trial Act, and then it may have, but there are various issues related and we believe novel issues, if your honors have seen the briefs, novel in the 11th Circuit at any rate, as to the related issues here. The first of which being that the motion to strike surplus as a non-dispositive motion should have been per local Northern District of Georgia Local Rule 12.1, should have been decided by a magistrate court judge, right, and ultimately it was deferred to the district court and then held over until the pretrial conference. And the fact of the matter is that no judge, either the magistrate court or the district court, ever actually held a hearing on the motion to strike surplus. And the issue as to the district court is that unless the court finds that the district court had authority to decide and hold a hearing and decide that motion, the issue should be under Local Rule 2.1, that that was the point of the Speedy Trial. Setting aside the local rule argument, can you explain on the record and on the transcript of the October 13th hearing, isn't it clear that the district court discussed the merits of this motion to strike? Even if perhaps the reference to the motion wasn't as explicit? I understand your Honor's point. There is some overlap as to possibly the content there. There were two motions being addressed. Defense counsel raised the issue when asked what other motions needed to be heard, raised the issue of the motion to strike. The district court judge then asked her to argue as to a motion in limine, as to some factual overlap as to the content of that, that the licensure to practice law or that he was no longer licensed. So certainly there is that, but there are two issues as to that point. The motion to strike surplus never came back to that and it was never specifically heard by the district court. But that's my question. How can you say that when there was a discussion on the record with counsel about removing from the indictment references to the licensure and then ultimately those references were removed? So in substance, how can you say there was no hearing on the motion to strike? In substance, because I believe that both of those should have at least been addressed separately. The motion in limine dealt with whether the information was relevant, but prejudicial. Under the issue of the motion to strike surplus, relevant evidence couldn't be excluded. I think that should have been addressed and specifically, and there should have been argument heard. And neither defense counsel or the government actually ever, that was not heard by the court. The court later said that she went back and looked at the content and made that decision. So the issue of this motion to strike, there was never actually a hearing on that sufficient to hold the trial. But was it to approach it from a different angle, Mr. Cox? Why isn't it the case that the motion to strike surplus age and the motion in limine to exclude evidence of the bar proceedings? Both stem from the same basic legal premise, which is this is irrelevant to the charges against Mr. Dettling and the jury shouldn't be apprised of it. It shouldn't be apprised of it when it gets the indictment at the end of trial to go back and deliberate, and it shouldn't hear any evidence of it during the government's presentation of its case. Aren't those two things the same, basically the same? It's the same operative fact, for lack of a better term. Yes, they stem from the same issue, but they weren't addressed, even if, in fact, ultimately the jury didn't hear that was not addressed in the context of the motion to strike surplus, which is the basis for the speed and trial claim. If I may, Your Honor, as I see from the clock, I'd like to briefly touch on the sufficiency of evidence argument in the jury structure. On the insufficiency of evidence, there was no evidence directly of actual knowledge of the misuse of funds by Mr. Dettling, as alleged in the indictment. The basis for this is wire fraud and misuse of funds from funding companies. At most, there was evidence that he was aware of those funds being deposited and held in the firm's IOLTA account. There was no evidence, and, in fact, there could be evidence to the contrary. There was evidence to the contrary that the operations manager and the managing partner were in charge of transfers of funds from the IOLTA to the firm's operating account. And a Rule 29 motion was raised as to the sufficiency of evidence at the end of the presentation of evidence. Your brief doesn't really discuss how it was that the funds came to the firm. You talk about how the witnesses from the two funding companies testified, and you explain that they only spoke to Mr. Dettling on limited occasions. But there's nothing in your brief that explains, regardless of who's responsible, how it was that the funds came into the firm. How did that happen? I don't know if it was by check or by wire transfer. No, I don't mean that. But, I mean, somebody had to submit a request to these funding entities, right? Yes, Your Honor. As to specific cases, one by one, it wasn't like an omnibus funding request. It would have been related to separate cases. And who submitted the request here? I cannot say with any assurance, Your Honor. I don't know the answer to that. Okay. Brian, you want to touch on the jury instruction issue? As to jury instruction, yes, Your Honor. I believe there was initially, I believe, an actual knowledge jury charge request. And at the end of evidence, the government modified that and asked for a deliberate ignorance test. And what was put forth was that a high probability. Essentially, a high probability of knowledge of something effectively then equaled actual knowledge. And an important and required component of that that was left out is that not only do you have to have a high probability of knowledge of something, that the defendant was also required to have taken deliberate steps to avoid knowledge. And not only, I believe, was there insufficient evidence to support that, that component was completely left out. And so that changed the whole structure of the charge and what the jury heard. And I believe had that been included, a reasonable jury could have found it would have been reasonable for a jury to find that the government had failed to carry its burden as to the defendant. All right, Mr. Cox, thank you very much. We'll give you your full five minutes for rebuttal. Thank you, Your Honor. Mr. Sislin. Good afternoon. May it please the court. Alex Sislin, behalf of the United States. And I know this isn't on the case, but I'd just like to thank the panel for accommodating me earlier or late last month, Your Honor. Thank you. We're very sorry for your loss. Thank you, Your Honor. The district court should be affirmed in all respects. And I will take up the issues in the order that my friend on the other side took him up, starting with the questions regarding the motion to strike. And I would like to address Judge Cannon, your question, and Judge Jordan, your question as to the hearing. I think, Judge Cannon, you're entirely correct. There absolutely was a hearing held relating to the motion to strike. What actually happened at the pretrial conferences is that Mr. Dentling's attorney tried to bring up the motion to strike first. And what the district court did, Judge May said, before we discuss the motion to strike, we need to resolve the motions and eliminate. And the motions eliminate touched upon what would be the scope of evidence that the government would be permitted to admit from the Georgia bar proceedings. Once the district court made a decision with respect to the scope of evidence that would be admissible. And if my memory serves me, I believe that that discussion between the court, myself, I was trial counsel on that issue, and defense counsel spanned approximately 18 pages of transcript. Then the district court made a definitive ruling on the motion to strike and told the government to strike the offending language from the indictment. So I think Judge Cannon, Judge Jordan, you are correct. There was a hearing within the meaning of the rule that touched upon the very motion at issue. In fact, the district court at the second pretrial hearing again reminded the parties that she had ordered certain language removed from the indictment. A redacted indictment was in fact presented to the jury. And the minute order, which I believe is record 139, also reflected the district court's ruling in that respect. Unless the court, unless your honors have any other questions as to the speedy trial issue, I can touch on the other issues. Well, Mr. Cox's argument seems to be that the hearing has to be more than perfunctory, that there has to be some substantive, meaningful discussion, some back and forth on the precise motion for the hearing to count as tolling the Speedy Trial Act. What is your response to that? So two responses to that, your honor. First, and I'm not deflecting, I just want to make clear that the 11th Circuit has never decided on the scope of what a hearing is. But under both cases that are cited in an appellant's brief, that's Graz from the Fifth Circuit and Stolula in the First Circuit. The issue is, was there an opportunity to hear arguments from defense counsel? The fact that it's relatively brief doesn't mean that there wasn't a hearing. And there was an opportunity for parties to argue both for and against it. In this case, all of the issues that were relevant to what was admissible under the motion in limine or the issues that were being discussed under the motion in limine, as highlighted by Judge Cannon, touched directly upon the issues that were to be resolved with the motion of strike. So it wouldn't have made sense for the parties to simply re-litigate or re-argue the very issues that informed the decision on the motion of strike, your honor. So I think that it was touched upon in this context. I do agree that there might be some circumstances where there would be just no discussion, there was a motion hanging out there, and it gets decided. But I don't think the factual record here supports that. And again, as I mentioned, even in the cases cited by appellant, neither the Fifth Circuit or First Circuit have demanded that there has to be some sort of specific length of discussion or specific give and take. It has to be touched upon. And at that very low threshold, it was certainly touched upon by the court. It was more than touched upon, but it certainly satisfied that very low threshold, your honor. All right. Moving on to the sufficiency of the evidence argument, your honor, the government would submit that there was overwhelming evidence to support the jury's verdicts that Mr. Delling was guilty of wire fraud and aggravated identity theft. I think that there was a question from the bench, and I believe it was from you, Judge Jordan, as to who submitted the request is how the court phrased it. And here the evidence at trial was overwhelming that it was Mr. Delling, the appellant who submitted the request. With respect to the Mighty Finance victim, and that was the victim who underlied the wire fraud counts, the submissions were via email. And the jury heard testimony from the owner of Mighty Finance, as well as its chief underwriting officer, that the only individual that they had engaged with from the Delling law firm was the defendant. The defendant provided not only the information relating to the victim clients and making the request for the amount of money that he wanted in terms of these fraudulent litigation advances, but the evidence also showed through email evidence that Mr. Delling was the one who provided the wiring instructions to the three bank accounts that received the fraudulent litigation advances from Mighty. And on that point to Mr. Cox's to, you know, did Mr. Delling know what knew what happened with the money or not. First, the wire fraud was complete months the money was was wired from the from the victim's account to the account. But even even with that aside. Well, that's not exactly that. Well, I think legally, you're probably right about how the wire fraud statute works, but had he actually used the money for its intended purpose, you wouldn't have had wire fraud, despite the transmission of the funds right. That's correct, Your Honor. If, for example, the money was transferred to the Iota account and you had victim, excuse me, the clients were not victims, the clients that actually wanted the litigation advances and you saw the funds were transferred to the victims either via check or wire, you're correct. Well, there wouldn't be a case at all right because the funds would have been used for their appropriate purpose. But here we know that with respect to two of the bank accounts, the affinity in the Georgia Commerce account, the affinity account was the first account that received funds and then the Georgia Commerce account. The evidence at trial show that Mr. Dettling was the only one who had access to those accounts. He was the one that opened the accounts. He's the one who had signatory authority over those accounts. Neither Ms. Cole or Ms. Ingram, the other individuals who Mr. Dettling tried to blame at trial for these actions had any access to those accounts. So the jury could reasonably infer that he understood that the funds that came in were fraudulent. In fact, as the evidence showed, he was the only one who was submitting the information to MITEI to receive those, excuse me, to receive those funds. And therefore the jury could infer that he was, and the jury also heard from the FBI forensic accountant that none of the funds had ever made it back to any of the victim clients. And although not every victim client testified at trial, 12 testified at trial, and all 12 testified to having never received funds with the exception of one who had actually solicited one of these litigation advances. So, Your Honor, I believe in response to the point that was raised in Mr. Dettling's opening briefing by Mr. Cox this afternoon, there was certainly sufficient evidence the jury could have concluded that not only did Mr. Dettling submit the applications with the intent to defraud the companies, but then knew how the money was used because he had access to those accounts. And with respect to the SunTrust account, which was the account that received the bulk of the funds, first there was the evidence before the Georgia Bar proceedings in which in an affidavit he said he was the one who controlled the account. There was also email correspondence that was solely between him and the Georgia Bar proceedings when there was overdrafts on the IOLTA, which was further evidence that he controlled that account. And then Ms. Ingram and Ms. Cole both testified that as the owner of the firm, Mr. Dettling had complete control over the firm and had final decision making over the finances. So even if they conducted the mechanics of moving the funds from the IOLTA account to the firm's operating account, those decisions were made at the direction of Mr. Dettling or in consultation with Mr. Dettling. Now the jury was free to disbelieve that testimony, obviously, from Ms. Ingram and Ms. Cole. They obviously did believe their testimony as they convicted Mr. Dettling on all accounts in a little bit over an hour. Your Honor, does that address the court's question with respect to the Lumina funds? And I want to move on. Yes, I just have one procedural question. Yes, Your Honor. Which of the counts were dismissed before the case went to the jury? Were they all relating to one of the funding entities or did they split up amongst the two funding entities? No, Your Honor, they were all relating to the capital financing funds. And so actually part of the discussion is whether or not the capital financing evidence should still come in at trial and the court admitted it in trial. So all the counts of conviction were regards to MITEI? That's correct, Your Honor. Okay. So which counts in the indictment were not presented to the jury, if any? It was, Your Honor, can I have a moment? I believe it was counts one through four related to capital financing. I'm sorry, Your Honor. It's been a few years since I did that. I apologize. I'm looking at the indictment. I see counts one through three reference capital financing. Count four references litigation ventures. Oh, it would have been just counts one through three then. Litigation ventures and MITEI were all the same related entities. And, Your Honor, I cannot recall if it's in the record specifically at the pre-trial conference that the district court had asked what had happened just so that the court is fully informed. Just prior to trial, we learned that the servers for capital financing were actually not out of the state of Georgia, and therefore we had lost interstate access. That's why we dismissed the counts. They were not? I'm sorry? When we charged the case, we understood that the server was in Florida. It turned out right before trial when we were doing trial prep that the server was actually in Georgia, and therefore we no longer had an interstate wire. That's why we dismissed it. For counts one through three? Correct. All right, let's talk about the jury instruction then. Yes, Your Honor. Your Honor, we believe that on a plain error review, Mr. Detling's challenge to the jury instruction should fail. First, I just want to correct something that Mr. Cox said, and I apologize to counsel if I just misunderstood. He indicated that during the jury instruction, the government sort of had substituted actual knowledge for deliberate ignorance. That's not what happened in the charging instructions. As Your Honors are well aware, under the Eleventh Circuit pattern instructions, the government has two ways of showing knowledge. They can show it through actual knowledge or through deliberate ignorance. In this case, the government, sort of late in the game, had decided that based on how the evidence came at trial, and in arguments that Mr. Detling had planned to make to ask the court to give obviously the actual knowledge instruction, but as well as the deliberate ignorance instruction in the alternative. So it's not correct to say that the jury was not instructed on actual knowledge. Then what happened is that during the third charge conference, defendants objected to giving any deliberate ignorance instruction. That objection came right after the district court had an exchange with my co-counsel, in which Judge May indicated that she was going to give the deliberate ignorance instruction, but because the example in the deliberate ignorance instruction relates to knowledge of knowingly possessing drugs and doesn't necessarily fit in a fraud case, the government had attempted to come up with an example that better fit the facts here. Judge May decided it had gotten too complicated. She was just going to omit the example and give the instruction without the example, and in total inadvertence, just dropped out the purposeful language part of the instruction. The government did not notice, Judge May did not notice, and most importantly, defense counsel did not notice, and so the jury was given that instruction. Importantly, at closing arguments, the government did not make any mention of deliberate ignorance. I went back and reviewed the closing argument transcript before the argument this afternoon, and the government focused on Mr. Detling's actual knowledge. It was only after the jury returned his verdict and Mr. Detling filed his post-trial briefs that they came to the government's attention that part of the instruction was missing. So accordingly, under Rule 30 in this court's presence, the government submits that the generalized objection to the deliberate ignorance instruction was insufficient to preserve the error, and therefore it would be subject to plain error. Now, in the brief, the government did argue that perhaps the error was not plain here because we were being maybe hyper-technical in saying that he's making a constructive amendment claim and there isn't a specific constructive amendment case that finds plain error in this context. I think for the purposes of argument, Your Honor, the government would concede that there was a plain error with respect to the actual instruction because it was missing that second element of the deliberate ignorance instruction, but regardless, Mr. Detling can't prevail on a plain error test because he just can't satisfy the second two prongs of plain error. He can show that it did not affect his substantial rights, undermine the public's confidence in the proceedings, where there was overwhelming evidence of his actual knowledge in committing the fraud, and the government's entire closing argument, in fact, the focus of the evidence, was on the fact that it was Detling and Detling alone that had committed the crimes. With that, unless the court has any questions, I apologize. Unless the court has any questions, the government respectfully asks that the district court be affirmed in all respects. All right. Thank you very much. Thank you, Judge Ordon. Mr. Cox, your rebuttal. If I may, I'd like to return to the first issue, the speedy trial issue as to the motion to strike, and I believe this is appropriate for rebuttal because we focused on the Judge May's handling of the motion to strike, although we may not agree about the upshot of that, but I'd like to return to the magistrate judge's purview and actual authority to have decided that. It should not have been with the district court to hear. There was no authority, as you see in the briefs. But, Mr. Cox, anything that a magistrate judge is authorized to hear, a district judge is authorized to hear. Is that not right? If a judge wanted to take up nondispositive motions, for example, on discovery in a civil case or something else in a criminal case, there's nothing that stops a district judge from resolving those without a magistrate, or am I missing something? I believe certainly in the case where a district court judge, even in the Northern District, where magistrate judges are given more broader powers, I think a district judge could always say, I would like to hear these issues, but I think that would be handled in some kind of affirmative way, and the local rule 12-1 says that such motions shall be heard by the magistrate judge, and it just was not. Nothing happened until there was this general ends of justice continuance given by the magistrate judge, which that was the end of March and went back and retroactively excluded from February 6th, I believe, up through April. On the subject of the speedy trial, and just speaking for myself, if I were to disagree with you that the district court did not hold a hearing, in other words, if I think a hearing did in fact take place because there was a discussion of the merits of the motion interconnected with the motion at Lemonnier, is there anything left to your speedy trial argument? I believe it is fair to say that the speedy trial argument ultimately turns on whether or not there was ever a hearing. Yeah, sure. If there was no hearing, then there was a speedy trial violation. Are you aware of any authority that says a local rule referring motions to a magistrate judge would somehow strip the district court of its authority to have a hearing on that motion? Well, I believe, and I apologize for not having the specific authority in front of me, typically under the local rule for something heard by a magistrate judge, then the district court would review that decision if one or both of the parties disagree with the decision. But it would be a review, not a separate hearing of the issue. And of course, in this case, there was no hearing, and our argument is that there should have been, and that the ends of justice continuance that the magistrate judge issued in the minute order didn't comply with the terms of the Speedy Trial Act. But first of all, again, there couldn't be a retroactive exclusion of time, and there needed to be specific reasons, depending on how the motion was heard, either oral or in writing, as to what the basis for the ends of justice were. And essentially that somehow the defendant's right to a speedy trial was less important than the needs in that regard. Your Honor, may I ask you a question? The motion on limits, you filed that directly to the district court and not the magistrate court, right? I believe they were before the magistrate court as well. And I apologize, Your Honor, I was not trial counsel, I don't know. Certainly the district court held the hearing on the motion. Anything else, Mr. Cox? No, Your Honor, thank you. Okay, Mr. Cox, Mr. Cicilla, thank you both very much. We appreciate the help, and we'll take the case under advisement. Thank you. Have a good day, Your Honors. Thank you. Thank you.